IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KIMBERLY K. MATTHEWS, Individually and as Personal Representative of the Estate of JERRY L. MATTHEWS, <br><br> Plaintiff, <br><br> v. <br><br> E. I. DU PONT DE NEMOURS AND COMPANY, <br><br> Defendants. | Civil Action No.:4:16-cv-02934-RBH <br><br> **ORDER** |

On August 25, 2016, Plaintiff initially filed this civil action in this Court, alleging causes of action against twenty-nine named Defendants. These other Defendants are no longer parties to this lawsuit, and Defendant E.I. du Pont de Nemours and Company is the only remaining Defendant in this case. This matter is before the Court for review of Defendant DuPont's Renewed Motion for Summary Judgment. [ECF #202]. DuPont asserts, among other things, that it was the decedent's statutory employer, and therefore South Carolina Workers' Compensation law provides Plaintiff's exclusive remedy. On May 31, 2018, Plaintiff filed a response in opposition to this Motion [ECF #203], and DuPont filed its reply brief on June 7, 2018. [ECF #204]. All parties have had the opportunity to brief the issues raised in the motions, and this Court has thoroughly considered all pleadings filed in this case.[1]

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

## Factual Background and Procedural History

It is undisputed that in the early 1960s, Jerry L. Matthews, Sr., worked for AC&S (also known as Armstrong Contracting & Supply Corporation), a company that contracted with DuPont to perform asbestos insulation on pipes within DuPont's facilities. DuPont corporate records show that during this time period, DuPont hired "asbestos workers" from AC&S. [ECF #203-6]. Mr. Matthews performed insulation work, which exposed him to asbestos, while working for AC&S at DuPont facilities located in South Carolina and Virginia.[2] Mr. Matthews worked as an insulation apprentice with AC&S at a DuPont facility in Florence, South Carolina starting in 1960 for at least two years. [ECF #202-2; Matthews Dep. 44:18-25; 45:1-8 (Jan. 30, 2017)]. While at the Florence location, Mr. Matthews mixed bags of asbestos-containing insulation mud and eventually handled, sawed, and applied asbestos-containing Kaylo pipe insulation. [ECF #202-2; Matthews Dep. 45-49]. Mr. Matthews also worked as an insulator at a DuPont facility in Camden for several months in 1964 and 1965 and at a DuPont facility in Martinsville, Virginia around this same time frame. [ECF #202-2; Matthews Dep. 95:6-11; 109:25-110:09; 406:20-407:02; 416:25-417:03]. While at the Camden facility, Mr. Matthews insulated pipe in a "spin beam" using asbestos-containing pipe insulation and asbestos cloth. [ECF #202-2; Matthews Dep. 95:12-96:5]. Mr. Matthews testified that the spin beam he was working on was part of the "old construction" and that the Camden plant was undergoing some remodeling. [ECF #202-2; Matthews Dep. 406:1-13]. Mr. Matthews performed similar work at the plant in Martinsville. [ECF #202-2; Matthews Dep. 110:4-22]. Mr. Matthews explained that the construction project at the Florence facility was

---

[2] DuPont notes that this fact is uncontested for purposes of its summary judgment motion.

"new construction" outdoors, while the construction project at both the Camden and Martinsville facilities involved extensive remodeling of the facilities. [ECF #202-2; Matthews Dep. 45:21-25; 94:12-25; 399:4-9; 407:22-22; 417]. Mr. Matthews recalls that the Camden plant produced nylon, and that they had to have spin beams to make the material. [ECF #202-2, Matthews Dep. 406: 1-13].

Though commonly identified as a chemical company, during this time period, DuPont also had other divisions, including a construction department, responsible for conducting major, new construction and renovation at DuPont's manufacturing facilities, as well as building facilities for the government and other companies, such as General Motors. [ECF #202-6; Dawson Dep. 35-36; 321-322 (July 19, 2017)]. DuPont regularly hired contractors to assist with construction, maintenance, repair, and remodeling and upgrading its facilities. [ECF #202-4; Aff. of James K. Addison, ¶¶ 5-11].[3] According to the corporate charter, the nature of DuPont's business at that time was quite broad and included both the preparation and sale of explosives, as well as the use of any materials and products used in or in connection with the sale or distribution of its products. [ECF #202-5, pp. 3-4]. The charter also references engaging in all kinds of business including "construction and industrial works and operations." [ECF #202-5, pp. 3-4]. Barbara Dawson, DuPont's corporate representative explained that by the 1960s, DuPont had many different divisions, including textiles, chemical, paint, engineering, and construction. [ECF #202-6; Dawson Dep. 35:12-24].

DuPont's construction division employees constructed new facilities and performed

---

[3] Mr. Addison was employed by DuPont between 1950 and 1990 and worked in the Engineering Department, specifically in the Construction Division from 1950 to 1975. [ECF #202-4, ¶ 2].

3

expansions, renovations and repair work. [ECF #202-4; Aff. of Addison, ¶ 5]. In order to complete these projects, DuPont also employed skilled craftworkers, including insulators, through contractors like AC&S. [ECF #202-4; Aff. of Addison, ¶¶ 5, 7-8]. DuPont's direct employees would, on occasion, perform the same craftwork performed by the contractors, including insulation work. [ECF #202-4; Aff. of Addison, ¶¶ 9, 10]; [ECF #202-6, Dawson Dep. 324-326]. However, DuPont hired "outside people" to execute major construction projects. [ECF #203-3, Dawson Dep. 252:1-20]. DuPont did not employ insulators on a full-time basis. [ECF #203-3; Dawson Dep. 250: 13-18].[4] Further, DuPont acknowledges it did not actually manufacture thermal insulation. [ECF #203-3; Dawson Dep. 35-36]. DuPont also agrees that it was not an "insulation company." [ECF #203-3, Dawson Dep. 37: 16-19]. DuPont was also not an insulating contractor. [ECF #203-8; Henshaw Dep. 79-81 (Nov. 16, 2017)].

During this time frame, the Florence Plant employed 65 mechanics to perform "part-time" insulation work, while the Camden Plant employed 188 such employees. [ECF #203-4; 203-5]. These records further show that the employees at the Florence plant spent approximately 10% of their time doing part-time insulation work, while employees at the Camden plant might spend up to 25% of their time doing insulation work. Depending upon the duration of the task, an outside contractor performing insulation work would have that job as his primary responsibility, whereas a direct employee would be performing insulation work as an incidental task. [ECF #203-3; Dawson Dep. 257: 6-23]. Mr. Matthews testified that he came with his own tools to the DuPont site. [ECF #203-2; Matthews Dep. 402:1-11].

---

[4] *See also* DuPont letters written in response to a questionnaire from Dr. C. A. D'Alonzo. [ECF #203-4, Exhibit D; ECF #203-5, Exhibit E].

4

Defendant provided the testimony of Mr. James K. Addison, the field project manager for DuPont at the time period in question, who stated that pipe insulation was a normal and important part of DuPont's operations and business activities. [ECF #202-4, Aff. of Addison ¶¶ 5-6]. He further averred that the craftwork performed by contractors was an essential, integral, and necessary part of the construction work performed by DuPont, and that employees of DuPont also performed the same craftwork that was performed by contractors, including mechanics who performed insulation and pipefitting. [ECF #202-4, Aff. of Addison ¶¶ 8-9]. According to Mr. Addison, the work performed by Mr. Matthews was directly related and important to DuPont's ongoing business and operations. [ECF #202-4; Aff. of Addison, ¶¶ 5-7]. Without the insulation work performed by AC&S, the company Mr. Matthews worked for, the expansion work at the three DuPont facilities could not have been completed, and the insulation work performed at these three facilities was a necessary, essential, and integral component of DuPont's construction business. [ECF #202-4; Aff. of Addison, ¶¶ 5-8].

On August 25, 2016, Mr. Matthews filed a Complaint against several defendants, alleging he developed lung cancer caused by breathing in Defendants' asbestos-containing products. [ECF #1]. Jerry L. Matthews died on December 23, 2017. [ECF #188]. On March 2, 2018, Plaintiff amended the Complaint to substitute the personal representative of the estate of Jerry Matthews, Sr., Kimberly K. Matthews, and to add a wrongful death claim. [ECF #192]. Defendant DuPont has now filed its Motion for Summary Judgment, arguing that Plaintiff's claims against DuPont must be dismissed because Plaintiff's exclusive remedy is a claim under the South Carolina Workers' Compensation Act (the "Act"), over which the South Carolina Workers' Compensation

5

Commission has exclusive jurisdiction. Defendant DuPont argues that because Mr. Matthews was a "statutory employee" of DuPont, South Carolina Workers' Compensation law provides the exclusive remedy for this claim. [ECF #202, p. 2]. It is Plaintiff's position that because the Act includes a statute of repose for Mr Matthews's asbestos-related lung cancer, which by its nature has a long latency period, his occupational disease is not compensable under the Act. [ECF #203, pp. 7-8]. Therefore, Plaintiff argues that unless there is a right to compensation under the Act, the exclusive remedy provision is inapplicable. [ECF #203, p. 8]. Plaintiff further argues that Mr. Matthews was not a statutory employee of DuPont, therefore Defendant is not entitled to summary judgment. Thus, at issue before this Court is whether Plaintiff is the statutory employee of DuPont, such that summary judgment is appropriate in this case. This Court has thoroughly considered the arguments and the evidence of record and now issues the following Order.

## Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving

6

party.  *Id.*  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992).  The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995).  Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)).  Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

Coverage under the Workers' Compensation Act depends on the existence of an employment relationship. *Edens v. Bellini*, 597 S.E.2d 863, 866, 359 S.C. 433 (S.C. Ct. App. 2004). Section 42-1-400 provides an exception to the general rule by imposing upon an owner or upstream employer liability for the payment of compensation benefits to worker who is not directly employed by the owner or upstream employer, depending upon the nature of the work performed. *Id.* The determination of whether a worker is considered a statutory employee is jurisdictional and is a question of law. *See Carrier v. Westvaco* Corp., 806 F. Supp. 1242, 1244 (D.S.C. 1992) (whether a plaintiff is a statutory employee is a question of subject matter jurisdiction); *see also Lentine v. 3M Co.*, No. 6:08-2542, 2009 WL 792495, at *2 (D.S.C. Mar. 23, 2009) (citing *Posey v. Proper Mold & Engineering, Inc.*, 661 S.E.2d 395, 378 S.C. 210 (S.C. Ct. App. 2008)). Notably, South Carolina policy warrants resolving jurisdictional doubts in favor of including employers and employees under the Act. *Kemp v. JHM Enters.,* Inc., No. 6:14-cv-02604, 2016 WL 859361, at *6 (citing *Edens v. Bellini*, 597 S.E.2d 863, 870 (S.C. Ct. App. 2004)). While generally the Act is construed broadly in favor of coverage, exceptions to coverage must be narrowly construed. *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65, 313 S.C. 91 (S.C. 1993).

## Discussion

### I. Whether Plaintiff is a Statutory Employee of DuPont under the Act

DuPont argues that summary judgment is appropriate in this case because Mr. Matthews was a "statutory employee" of DuPont whose exclusive remedy is under the Workers' Compensation Act. Plaintiff denies this claim and argues that Mr. Matthews's work insulating pipes at the DuPont plants was unrelated to its trade, business or occupation, and moreover

8

DuPont did not employ anyone full-time to perform this same type of work.

The statutory exception, found in section 42-1-400 of the Act, states:

[w]hen any person, in this section and Sections 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person . . . for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay any workman employed in the work any compensation under this title which he would have been liable to pay if the workman had been immediately employed by him.

This statute therefore requires that employees of an independent contractor may be deemed the "statutory employee" of the hiring premises owner if the work performed is part of the premises owner's "trade, business, or occupation." *Id.; see generally Olmstead v. Shakespeare*, 581 S.E.2d 483, 484, 325 S.C. 198 (S.C. 2003). Conversely, if the work is not part of the trade or business of the premises owner, the contracted employee would not be considered a statutory employee and could maintain a suit for damages.[5] The following tests are applied to determine whether the activity of an employee of a contractor, such as Plaintiff, is sufficient to make him a statutory employee as it is defined under § 42-1-400: (1) is the activity an important part of the owner's business or trade; (2) is the activity a necessary, essential, and integral part of the owner's trade, business or occupation; or (3) has the identical activity previously been performed by the owner's employees? *Edens*, 597 S.E.2d at 868; *see also Glass v. Dow Chem. Co.*, 482 S.E.2d 49, 50, 325 S.C. 198 (S.C. 1997). The activity in question need only meet *one* of the three criteria for the worker to qualify as a statutory employee of the owner or upstream employer. *Edens*, 597 S.E.2d

---

[5] DuPont states that to the extent Virginia law may govern Plaintiff's claims, it is in accord with South Carolina on this point. [ECF #202-1, p. 9]. The Virginia Workers' Compensation Act bars employees of contractors from bringing common law actions if those employees are performing activities that are part of the owner's "trade, business or occupation." Va. Code Ann. § 65.2-302(A).

9

at 868 (emphasis added). Since no easily formula exists to determine whether work in a particular case meets these tests, each case much be decided on its own facts. *Glass*, 482 S.E.2d at 51.

Mr. Matthews suffered from lung cancer after years of working on insulating pipe beams with asbestos materials within DuPont's facilities. DuPont contends that the work performed by Mr. Matthews, that of insulating piping, is an important part of DuPont's business. Defendant specifically argues that construction of plants, both its own plants, as well as construction for other companies, was "part of" DuPont's business, as evidenced by the fact that it had a construction department. DuPont further argues that the work performed by Mr. Matthews was essential, necessary, and integral to DuPont's business because it ensured continued production of its products and allowed for expansion and renovation of DuPont's facilities. Plaintiff's response is that DuPont is not an insulation company or insulating contractor, and did not manufacture insulation, therefore Mr. Matthews's work insulating pipes was incidental to DuPont's business. Further, Plaintiff argues that Mr. Matthews was re-insulating pipe beams, rather than working on constructing new facilities for DuPont; therefore, the fact that DuPont has a construction department is not dispositive. Plaintiff further argues that DuPont was not equipped to handle major insulating jobs, nor did Defendant provide contractors such as Mr. Matthews with the tools or equipment to install insulation at the plants. While Plaintiff concedes that insulating spin beams might be important to the manufacturing process of DuPont, Plaintiff argues that it does not follow that insulating work was "part of" DuPont's manufacturing business. Finally, Plaintiff argues that DuPont did not employ anyone full-time to perform insulation work, therefore

DuPont's direct employees were not performing the same work as Mr. Matthews.

The facts in this case compel this Court to find that Mr. Matthews's work insulating pipes at the DuPont facilities renders him a "statutory employee" under the Act because the activity meets at least one of the tests reiterated above. First, Mr. Matthews's work insulating beams for new construction at the Florence plant was an important part of DuPont's business as it relates to the construction of the facilities. South Carolina courts have previously determined that construction is ordinarily considered outside the trade or business of a manufacturer. *Raines v. Gould, Inc.*, 343 S.E.2d 655, 288 S.C. 541 (S.C. Ct. App. 1986). However, where a business by its size and nature commonly carries on an ongoing program of construction, or has a construction division, or has handled its own construction in the past, then construction work delegated to a contractor may be considered part of the trade or business. *Id.* at 657-658; *see, e.g., Parker v. Williams and Madjanik, Inc.*, 267 S.E.2d 524, 275 S.C. 65 (1980) (determining an employee of a subcontractor was a statutory employee of a realty company whose partnership agreement provided that construction and repair was part of the company's business); *MacMullen v. South Carolina Electric & Gas Co.*, 312 F.2d 662, 663 (4th Cir. 1963) (finding an employee of a subcontractor to be a statutory employee involved in the construction of a power plant, explaining that the power company was authorized by its charter to construct plants and the company's employees were engaged in continuous construction of power plants). In *Raines*, the Court of Appeals of South Carolina explained that even work which a business might not perform with its own employees may be considered "part of" the trade of business if the work is an integral part of the company's operations, without which the company could not function *Id.* at 658-59.

Ultimately, the *Raines* court determined that the plaintiff, who was installing an electrical system at the plant, was not a statutory employee of the defendant, in part because the company, which manufactured and sold batteries, did not have a construction division, nor was any construction work performed by the company's regular employees. *Id.* at 659.

Mr. Matthews identified the work he performed at the Florence facility as a part of new construction and the work at the Camden and Martinsville facilities as renovation or repair work. DuPont had a "construction division" responsible for constructing new manufacturing facilities, as well as repairing or renovating existing facilities. The corporate charter identifies construction as included in the nature of the business. It is true that DuPont was not an insulation company or insulating contractor, and it appears that Mr. Matthews's primary responsibility in insulating pipe beams was not commonly handled by DuPont's employees on a full-time basis. Where repairs are specialized, major, or the type of work which the employer is not equipped to handle with its own employees, that work is not a part of the business. *Glass*, 482 S.E.2d at 51. However, the work performed by Mr. Matthews was a part of the work performed, at least on an incidental basis, by some construction division employees within DuPont. Further, in other cases, South Carolina courts have determined that maintenance and repair can be important to a company's business. *See Edens*, 597 S.E.2d at 868; *see also Johnson v. Jackson*, 735 S.E.2d 664, 670, 401 S.C. 152 (S.C. Ct. App. 2012) (where the South Carolina Court of Appeals determined that an employee who unloaded technology equipment from trucks owned by a transportation business was a statutory employee of that company). Mr. Matthews's work repairing or renovating pipes at the plant is important to DuPont's business because it helped further the construction of

facilities, which is one of DuPont's business objectives.

Second, even if this Court were to agree that construction was not an important part of DuPont's business, Mr. Matthews's work was certainly necessary, essential and integral to DuPont. A person is performing the "trade, business, or occupation" of the employer if the person performs work which is essential to the function of the continued business of the employer, even if the company's own employees have not performed the same chore. *See generally Singleton v. J.P. Stevens & Co.*, 726 F.2d 1011, 1013 (4th Cir. 1984). DuPont could not manufacture its products without properly functioning facilities, and Mr. Matthews's work to properly insulate pipe beams within those facilities was essential to the running of DuPont's facilities. *Id*. at 1014 (the repair of electrical cables was found to be an essential part of a textile company's business because otherwise the plant could not operate). While this Court agrees with Plaintiff that *Abbott v. The Limited, Inc.*, 526 S.E.2d 513, 338 S.C. 161 (S.C. 2000) and *Olmstead v. Shakespeare*, 581 S.E.2d 483, 354 S.C. 421 (S.C. 2003) provide a solid framework in determining whether an individual is a "statutory employee," the facts in those cases are inapposite to the facts at issue here. *Abbott* and *Olmstead* focused on whether the receipt or delivery of goods to a company is considered part of the business of that company. Thus, these cases reiterate the point that the focus must be on the type of business DuPont conducted. Were this Court to narrowly define DuPont's business as the manufacturing of chemicals and synthetic fibers, as Plaintiff suggests, maintenance of the plant in which the manufacturing is performed is still vital, essential, and necessary to the operation of DuPont's business. Mr. Matthews spent several months working at each of these plants to insulate pipes with asbestos-containing materials. Indeed, Mr. Matthews himself

13

confirmed that without the insulation of spin beams, the nylon products made at the Camden facility could not have been produced. Further, Mr. Matthews's work in insulating these pipes was essential to the proper functioning of all of the plants. Without insulation around the pipes, the employees could not work to create DuPont's products. Plaintiff acknowledges in the response brief that "spin beams themselves may be important to the manufacturing process and it might be important to DuPont for the spin beams and associated piping in these plants to be insulated to protect workers from getting burned by hot pipes." [ECF #203, p. 13]. The fact that DuPont's direct employees relied upon the proper operation of the associated piping to make DuPont's products strongly suggests that Mr. Matthews's work as an insulator, specialized or not, was essential to DuPont's business. Accordingly, the maintenance of these pipe beams is important in allowing DuPont to continue its operations, and essential to the vitality of DuPont's business. *See Marchbanks v. Duke Power Co.*, 2 S.E.2d 825, 190 S.C. 336 (S.C. 1939) (finding that the plaintiff who was injured while painting utility poles was a statutory employee of Duke Power).

The activity performed by Plaintiff, insulating pipe beams, whether as "new" or "old" construction, is an important part of DuPont's business or trade. DuPont's business is to manufacture chemicals, *as well as* construct new facilities to accomplish that goal. Moreover, integral and necessary to DuPont's business of manufacturing chemicals and synthetic fibers is the proper functioning of the plant. This Court therefore finds that there is no genuine issue of material fact as to whether Plaintiff was a statutory employee of DuPont under either of these first two tests.

With respect to the third test, DuPont's direct employees have performed the same activity

14

on an occasional basis as the activity performed by Mr. Matthews. While the documents referenced by Plaintiff reflect that DuPont did not employ anyone to insulate beams full-time, DuPont did directly employ crafts people to perform insulation at certain facilities, depending on the plant site.[6] Plaintiff argues that none of DuPont's employees were "asbestos workers," and the direct employees did not perform the type of identical, specialized work as Mr. Matthews. Documents provided by Plaintiff show that both the Florence and Camden sites had several part-time insulators, including 188 employees who would perform insulation at the Camden plant, and 65 employees at the Florence plant, though on an infrequent basis. This evidence supports DuPont's contention that direct employees performed the same work as Mr. Matthews, albeit on a part-time or infrequent basis. Dupont acknowledges that it hired outside contractors to handle major insulating jobs, but Plaintiff does not point to any case law requiring a company to have employees performing the same jobs at all locations on a full-time basis in order to satisfy the test that the identical activity has previously been performed by the premises owner. Nonetheless, the Fourth Circuit has previously concluded that, "[t]he South Carolina Supreme Court has held that a person is performing the trade, business, or occupation of an owner if he is engaged in work that is essential to the function of the employer's business, *even if the employer never*

---

[6] *See Ewing v. A.W. Chesterton Co.*, No. 09-CP-40-8342, South Carolina Court of Common Pleas, attached as Exhibit G to Defendant's Motion. Judge Garrison Hill, a South Carolina Circuit Judge, found in this case that a pipefitter working for a contracted company of DuPont was found to be a statutory employee. [ECF #202-8, Ex. G]. Judge Hill applied the test to determine whether an employee is a statutory employee, and considered the fact that DuPont maintained a construction division for a least fifty years, and through that division, DuPont hired the employee's direct employer to assist in the "construction maintenance, repair, and upgrade of a number of DuPont's facilities, including in Camden and Florence. [ECF #202-8, p. 6].Judge Hill further explained that during certain time periods, DuPont's direct employees performed the same type of craftwork as the statutory employee in that case, a pipefitter.[ECF #202-8, p. 6].

*performed that particular work with its own employees.*" *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984) (citing *Boseman v. Pacific Mills*, 8 S.E.2d 878, 193 S.C. 479 (1940); *Wilson v. Duke Power Co.*, 258 S.E.2d 101, 273 S.C. 610 (1979)) (emphasis added); *see also Singleton v. J.P. Stevens & Co., Inc.*, 726 F.2d 1011 (4th Cir. 1984) (citing to *Boseman* to determine that a workman repairing high voltage cables at a textile manufacturing plant was a statutory employee). Even if this Court finds that DuPont did not have its own employees performing identical work as Mr. Matthews, summary judgment is still appropriate because the facts in this case still meet either of the first two tests discussed above to determine that Mr. Matthews is a statutory employee of DuPont. Accordingly, Plaintiff's only recourse against Defendant is under the Workers' Compensation Act.

## II. Applicability of the Exclusive Remedy Provision and the Statute of Repose

Plaintiff also argues that the Workers' Compensation Act is not Mr. Matthews's exclusive remedy because he does not have a right to compensation under the Act based on the statute of repose. Section 42-11-70 provides the following:

> Neither an employee nor his dependents shall be entitled to compensation for disability or death from an occupational disease, except that due to exposure to ionizing radiation, unless such disease was contracted within one year after the last exposure to the hazard peculiar to his employment which caused the disease, save that in the case of a pulmonary disease arising out of the inhalation of organic or inorganic dusts the period shall be two years.

This statutory provision provides for compensation under the Act for occupational diseases (pulmonary diseases) that arise within two years of the last exposure to asbestos. Plaintiff argues that his injury, attributable to asbestos exposure, has a long latency period, therefore, Mr. Matthews did not develop lung cancer until 2015, decades after his last exposure to asbestos at

16

DuPont. Specifically, Plaintiff argues that the occupational disease in question, lung cancer, developed approximately forty years after his last potential exposure to asbestos at a DuPont plant; thus, his injury is not compensable under the Act, and the exclusive remedy provision is inapplicable in this case. In response, Defendant argues that, contrary to Plaintiff's assertion that this provision *excludes* pulmonary disease from the reach of the Act, the statute of repose operates to *extinguish* a right to compensation for injuries related to pulmonary disease arising out of inhaling asbestos which are contracted two years after the last exposure to the hazard.

Statutes of repose serve to relieve potential defendants from liability for acts committed long ago and reflect a legislative judgment that after a period of time, a defendant should be free from liability. *Johnson v. Roberts*, 812 S.E.2d 207, 209-210, 422 S.C. 406 (S.C. Ct. App. 2018); *see generally Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987). Where a statute of repose is enacted limiting the time for filing a claim, it has the effect of creating a substantive right created by law. *Goad*, 831 F.3d at 511. Thus, statutes of repose can have the effect of extinguishing a claim even prior to discovery of the claim. *Columbia/CSA-HS Greater Columbia Healthcare Sys., LP v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 769 S.E.2d 847, 848–49 411 S.C. 557 (S.C. 2015). While South Carolina Courts have not expressly considered what effect the statute of repose has on the exclusivity provision in the context of worker's compensation claims,[7] the Worker's Compensation Commission has routinely barred employees from receiving benefits under the Act pursuant to Section 42-11-70 where the two year time

---

[7] In fact, Plaintiff explains within a footnote that in *Skinner v. Westinghouse Elec. Corp.*, 716 S.E.2d 443, 445, 394 S.C. 428 (S.C. 2011), the South Carolina Supreme Court did not reach the question of the effect of Section 42-11-70 on the exclusivity provision under the Act. Neither party has requested that this Court certify this question to the Supreme Court of South Carolina.

17

period has expired. *See, e.g.,* Chester Truax, Employee, Claimant/respondent/appellant Daniel Constr./fluor Daniel, Employer & St. Paul Travelers Ins. Co., Carrier, Defendants/appellants/respondents, 0411701, 2009 WL 1433538, at *4–5 (S.C. Work. Comp. Comm. Mar. 27, 2009); Jesse L. Bishop, Employee/claimant Westinghouse Elec. Corp., Carrier/defendant, 0318085, 2007 WL 904837, at *9 (S.C. Work. Comp. Comm. Jan. 26, 2007); Norman Gibson, Employee, Claimant Westinghouse Elec. Corp., Carrier, Defendant, 0319071, 2007 WL 869985, at *8 (S.C. Work. Comp. Comm. Jan. 24, 2007). These administrative decisions acknowledge that the purpose the statute of repose is to protect the employer against claims which, due to the passing of time, can no longer properly be investigated and defended. Further, this Court must give due consideration to the legislature's intent in its decision to limit the time period for employees with asbestos-related injuries to recover under the Act, despite its harsh application in this case.

Courts in other jurisdictions have also considered similar workers compensation statutes and rejected the argument that a statute of repose removes an occupational injury beyond the reach of the exclusive remedy provision. *See generally Hendrix v. Alcoa*, 506 S.W. 3d 230, 237 (Ark. 2016 )(rejecting a similar argument, despite acknowledging the fact that mesothelioma has a long latency period); *Folta v. Ferro Eng'g*, 43 N.E.3d 108, 119 (Ill. 2015) (rejecting an equal protection argument and finding the exclusive remedy controlled, even though under some circumstances an employee may not be able to recover under the Act). In *Folta*, the Illinois Supreme Court considered whether the Illinois workers compensation law dictating that any claim for an asbestos-related injury must be brought within twenty-five years of exposure, took the claim

outside the reach of the exclusivity provision. That court reasoned that the legislature clearly intended to extinguish an employer's liability at some definite point in the future when it decided to include a statute of repose period. *Id.* at 117. Here, the plain reading of the statute of repose serves to clearly provide that claims for pulmonary disease arising out of the inhalation of organic or inorganic dusts must be brought within two years after the last exposure to the hazard. Mr. Matthews worked for DuPont throughout the 1960's. He developed his pulmonary disease decades later, well past the period provided for in the statute of repose. While this result may seem unfair, this Court is not tasked with legislating. Accordingly, this Court agrees with Defendant DuPont that as to DuPont, Mr. Matthews's claim is governed by the Workers' Compensation Act and its exclusivity provisions. Any effect of the Act's statute of repose does not allow him to seek compensation through a civil lawsuit.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings, motions, and response to those motions. For the reasons stated above, Defendant's renewed Motion for Summary Judgment [ECF #202] is **GRANTED.** Plaintiff's Amended Complaint [ECF #192] is **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

Florence, South Carolina         s/ R. Bryan Harwell
November 13, 2018        R. Bryan Harwell
       United States District Judge